Charlie L. HENDERSON

v.

The ARUNDEL CORPORATION, a body corporate, and Elder Dempster.

No. 4777.

United States District Court
D. Maryland.

May 25, 1965.

Joseph F. Lentz, Jr., and Raymond J. Cardillo, Monfred & Lentz, Baltimore, Md., for libellant.

Henry M. Decker, Jr., J. Cookman Boyd, Jr., and Walter S. Levin, Baltimore, Md., for respondent Arundel Corporation.

Southgate L. Morison, Baltimore, Md., for respondent Elder Dempster.

R. DORSEY WATKINS, District Judge.

Libellant, mate on a dredge owned, operated or controlled by respondent The

Arundel Corporation (Arundel), by a libel in personam seeks to recover from Arundel and Elder Dempster, a foreign corporation which owned, operated or controlled the M/S PRAHSU, approximately six weeks' wages, maintenance and overtime from January 29, 1963. His cause of action is based upon allegations that the dredge owned by Arundel and the M/S PRAHSU collided on January 28, 1963 through the combined negligence of the two respondents, causing severe damage to the dredge, necessitating the dredge and her crew, including libellant, to be idled until necessary repairs could be made; and that "solely as a result of the collision aforesaid and his subsequent wrongful discharge", libellant lost wages, etc., to the estimated amount of $6,500.

Arundel filed an answer, alleging that the libel failed to state a claim against it on which relief could be granted; denied ownership, operation or control of the named dredge; admitted a collision between a pipe line attached to a different dredge owned by Arundel, on which libellant was employed as a mate and the M/S PRAHSU, but denied want of care on its part or that libellant's losses arose therefrom; and alleged that libellant's employment was at an hourly rate, terminable at will; that libellant's employment "was suspended by Arundel on or about February 1, 1963, for reasons unconnected with the aforesaid collision" and that said suspension was in no way connected with or caused by the idling of the dredge on which libellant was employed.

Elder Dempster filed exceptions to the libel, on the grounds that it failed to state a cause of action against it; and that damage from the collision, necessitating the idling of the dredge on which libellant was employed, and of its crew, "does not give libellant a cause of action against this respondent for wages, overtime and maintenance which he would normally have earned during the period he was idle, even if said collision was due in whole or in part to the negligence of this respondent, which is denied."

The exceptions were ably (and commendably, succinctly) briefed by libellant, and by respondent Elder Dempster. Elder Dempster argues that negligently damaging a person's property, even if a vessel, does not make the tortfeasor liable to another, even if a seaman, "simply because the property owner had a contract with that other person", relying upon Robins Dry Dock & Repair Co. v. Flint, 1927, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290; Borcich v. Ancich, 9 Cir. 1951, 191 F.2d 392 (admittedly reversed in Carbone v. Ursich, 9 Cir. 1953, 209 F.2d 178, 182); Casado v. Schooner Pilgrim, Inc., D.Mass.1959, 171 F.Supp. 78; Petition of Clipper Fishing Corporation, Inc., D. Mass.1961, 194 F.Supp. 827; Baird v. Chesapeake & Potomac Telephone Co., 1955, 208 Md. 245, 117 A.2d 873; and Thomson v. United States, 4 Cir. 1959, 266 F.2d 852.

Libellant stated the question, somewhat narrowerly, as whether he could recover for wages, etc. "which he would have earned if the dredge had continued to operate, assuming such losses can be determined with reasonable accuracy and assuming further his employer fails or refuses to protect these interests;" citing numerous cases holding that in a suit by the employer against a third party tortfeasor in a ship collision case recovery could be had for wages paid to the crew; recognizing that some cases, such as Thomson, supra, allowed recovery of wages only when paid for the protection of the vessel, her successful salvage, or her subsequent efficiency; seeking to distinguish the authorities cited by respondent Elder Dempster; and relying in support of direct action by a seaman against a third party tortfeasor on Carbone, supra, and Taber v. Jenny, D.C.D. Mass.1856, 23 Fed.Cas. page 605, No. 13,720.

It is not necessary for the court at this time to choose between the various potential choices. The exceptions of Elder Dempster must be sustained upon either or both of the following grounds:

1. The libel itself shows the alleged loss of libellant was "solely as a result

of the collision aforesaid and his subsequent wrongful discharge." There is no allegation, or even implication, that respondent Elder Dempster was in any way, directly or indirectly, responsible for, or associated with, libellant's "wrongful discharge." Further, since it does not from the libel appear how soon after the collision the "subsequent" discharge occurred, it does not affirmatively appear that respondent Elder Dempster would be liable for any, or if so how much, of the claimed damages, even if libellant had a direct cause of action.

2. The libel does not allege any failure or refusal on the part of Arundel to protect libellant's interests, a condition precedent to direct action by libellant upon his own contentions.

The libel will be dismissed as to respondent Elder Dempster, with leave to file an amended libel within thirty days.