Connolly, J.
The plaintiff, Princeton Capital Finance Company, LLC (“Princeton”), brought this suit naming Marketechs, Inc.; Robert F. Feige (“Feige”); First Capital Services, Inc. (“First Capital”); and Webster Bank (“Webster”) as defendants as a result of Marketechs’ default on a Contracts Financing Agreement (the “Agreement”) entered into with Princeton. Pursuant to Mass.R.Civ.P. 12(b)(2), defendant and reach and apply defendant Webster Bank, a federally chartered bank with a principal place of business in Waterbuiy, Connecticut, has moved to dismiss all claims against it in Princeton’s amended complaint for lack of personal jurisdiction. For the reasons set forth below, Webster’s motion to dismiss for lack of personal jurisdiction is ALLOWED.
BACKGROUND
On or about November 28, 1995, Marketechs executed and entered into a Contracts Financing Agreement with Princeton under which Princeton agreed to provide invoice financing to Marketechs pursuant to the terms of the Agreement and certain Contractor Promissory Notes.
As part of the financing agreement, Marketechs granted Princeton a continuing security interest covering all of Marketechs’ tangible and intangible assets including all accounts receivable, inventory, equipment, money and proceeds derived from all such assets. Princeton filed U.C.C. Financing Statements at the Secretary of State’s Office and at the Town of Natick thereby perfecting its security interest on Marketechs’ assets. The Agreement provided that upon default of the Loan, Princeton was entitled to possession of the collateral identified in the Loan as well as to full payment of all outstanding amounts due.
On November 28, 1995, Robert Feige executed a personal guaranty under which he unconditionally and irrevocably guaranteed Princeton full and prompt payment for all amounts due under the Agreement and for any Promissory Notes executed by Marketechs. Under the guaranty, Feige also guaranteed payment of all invoices assigned by Marketechs to Princeton.
At some time between December 6, 1995 and January 17, 1996, Princeton and Marketechs executed a Commercial Notice of Assignment and forwarded it to Webster Bank. The Notice of Assignment required that Webster remit all payments due to Marketechs of its accounts receivable to Princeton. Pursuant to a written contract, Marketechs had performed a PC acquisition, installation, and maintenance support services for which it was still billing Webster. Notwithstanding the Notice of Assignment, Webster continued to make payments directly to Marketechs. As of July 17, 1997, Marketechs had accepted direct payments from Webster totaling $1,666,526.33.
Princeton filed this amended complaint alleging that Marketechs had defaulted under the Loan by, among other things, collecting receivables directly from Webster. Princeton named Webster Bank as a defendant alleging conversion, negligence and violation of G.L.c. 93A. Webster Bank has moved to dismiss for lack of personal jurisdiction.
DISCUSSION
Personal jurisdiction of a nonresident defendant requires a two-step analysis. The court must first consider whether the state’s longarm statute, G.L.c. 223A, §§3(a)-(g), authorizes the exercise of jurisdiction over the defendant. The court must then consider whether the exercise of jurisdiction over the defendant is constitutional under the due process clause. Only where both questions are answered affirmatively is the court’s exercise of jurisdiction over the defendant permissible. See Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994); see also Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). When a defendant files a 12(b) (2) motion alleging that the court lacks personal jurisdiction, the plaintiff “has the burden of establishing the facts upon which the question of personal jurisdiction over a defendant is to be determined." Id. citing Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 151 (1978).
Webster Bank and Princeton have stipulated that G.L.c. 223A, §3(d)[1] is the only possible section in the Massachusetts Longarm Statute that might subject Webster to personal jurisdiction in Massachusetts. To satisfy the first requirement of this statutory provision, Princeton must show that Webster caused tor-tious injury in Massachusetts by an act or omission occurring outside Massachusetts. G.L.c. 223A, §3(d).
The facts alleged in Princeton’s amended complaint do not clearly establish whether this is truly a tort-based cause of action, as Princeton alleges, or whether it is in fact a contract-based action “dressed” like a tort. This court is aware of the line of cases preventing *158 plaintiffs from alleging tort claims in purely contract causes of action for the purpose of obtaining personal jurisdiction over a defendant under G.L.c. 223A, §3(d). See LTK Corp. v. Daewoo Corp., 979 F.Supp. 51, 56 (D.Mass. 1997); see also Petricca Construction Co. v. A.C. DeSoto Equipment Co, Inc., 1981 U.S. Dist. LEXIS 10837 (D.Mass. 1981). However, for the purpose of this motion to dismiss, this issue need not be resolved because the parties have stipulated that this court will only have personal jurisdiction over Webster if the cause of action is one based in tort.
Assuming, without deciding, that the facts of this case support the tort claims of conversion, negligence, and violation of G.L.c. 93A, they would have to be dismissed. For jurisdictional purposes, “(i]n conversion cases, injury to a plaintiff occurs where the property is converted.” U.S. v. Swiss American Bank, Ltd., 23 F.Supp.2d 130 (D.Mass. 1998). The uncontroverted facts of this case show that Princeton’s property was converted in Connecticut because it was there that Webster made the payments to Marketechs. Therefore, it was in Connecticut that Princeton suffered injury. See id. The first prong of G.L. 223A, §3(d), specifically that Webster caused tortious injury in Massachusetts by an act or omission outside Massachusetts has not been met by Princeton. This court cannot exercise personal jurisdiction over Webster under this statutory provision on the conversion claim and it must therefore be dismissed.
Princeton’s negligence claim also fails. The economic loss rule “provides that, when a defendant interferes with a contract or economic opportunity due to negligence and causes no harm to either the person or property of the plaintiff, the plaintiff may not recover for purely economic losses.” Garweth Corp. v. Boston Edison Co., 415 Mass. 303, 305 (1993), citing Robins Dry Dock & Repair Co. v. Flint, 275 U.S. 303, 309 (1927). In its amended complaint, Princeton does not allege that it suffered physical or property damage as a result of Webster’s paying the sums directly to Marketechs. Since Princeton only alleges economic loss, the negligence claim must be dismissed.
Similarly, Princeton’s G.L.c. 93A claim against Webster cannot survive Webster’s motion to dismiss. The statute provides that “(n]o actions shall be brought or maintained under this section unless the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred primarily and substantially within the commonwealth.” G.L.c 93A, §11; see also American Mgmt. Serv. v. George S. May Intern. Co., 933 F.Supp. 64, 67 (D.Mass. 1996). This provision in the Consumer Protection Act requiring that the act complained of occur primarily and substantially in Massachusetts is in direct conflict with G.L.c. 223A, §3(d), requiring the tortious act or omission to take place outside Massachusetts. For this reason, Princeton’s G.L. 93A claim against Webster Bank must also be dismissed.
ORDER
For the foregoing reasons, it is ORDERED that Webster Bank’s motion to dismiss for lack of personal jurisdiction is ALLOWED.

 General Laws c. 223A, §3 states in relevant part:
A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person’s ...(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.