James F. Doré, Borron, Delahaye, Edwards & Doré, Plaquemine, LA, for plaintiff.

Michael W. Adley, Juneau, Judice, Hill & Adley, Lafayette, LA, for defendants.

**INGRAM BARGE COMPANY,**

v.

**EXXON COMPANY, et al.**

**Civ. A. No. 92–1092–B.**

United States District Court,
M.D. Louisiana.

Nov. 5, 1993.

**RULING ON DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

POLOZOLA, District Judge.

This matter is before the Court on the defendants' motion to dismiss for lack of subject matter jurisdiction. For the reasons assigned below, the defendants' motion is denied.

On December 24, 1989, the M/V Bill Gee, owned by Ingram Barge Company (Ingram), was moored in the vicinity of the Exxon refinery in Baton Rouge, Louisiana. An explosion of liquid petroleum gas from a land based pipeline within Exxon's refinery occurred. The shock waves from the explosion made their way to the M/V Bill Gee and allegedly caused George Voisin, a member of that vessel's crew and an employee of plaintiff, to fall and injure himself. As a result of Voisin's injuries, the plaintiff made maintenance and cure payments to Voisin in the

**46**

amount of $33,073.24. Subsequently, plaintiff filed suit against the defendants, Exxon Company, U.S.A., Exxon Corporation and Exxon Pipeline Company[1], for reimbursement of the maintenance and cure payments it made to Voisin. Defendants now move the Court to dismiss plaintiff's action on the grounds that the Court lacks subject matter jurisdiction.

## ADMIRALTY AND MARITIME JURISDICTION

It is now well established that in determining whether a tort action falls within the Court's federal admiralty jurisdiction, the Court must apply the two-part test set forth by the Supreme Court in *Executive Jet Aviation, Inc. v. City of Cleveland*[2] and *Foremost Ins. Co. v. Richardson.*[3] First, the damage or injury must occur on navigable waters—often referred to as the "situs" or "locality" prong. Second, the wrong must bear a significant relationship to traditional maritime activity so as to invoke admiralty jurisdiction—often called the "nexus" prong.[4]

■ The defendants concede that Voisin's alleged injuries occurred while Voisin was located over navigable waters. Therefore, the sole issue before the Court is whether plaintiff's claim for reimbursement of maintenance and cure payments made to a seaman has a significant relationship to traditional maritime activities so as to support admiralty tort jurisdiction.

In *Kelly v. Smith*[5] the Fifth Circuit developed four factors for the Court to consider when determining whether a "nexus" exists between the wrong committed and traditional maritime activity. These factors are:

(1) the functions and roles of the parties;

(2) the types of vehicles and instrumentalities involved;

(3) the causation and the type of injury;

(4) and traditional concepts of the role of admiralty law.[6]

Although the Supreme Court in its latest admiralty and maritime jurisdiction pronouncement neither approved nor disapproved of the *Kelly* approach,[7] the Fifth Circuit has expressly continued to follow the *Kelly* approach and the cases applying it.[8] Applying the *Kelly* factors to the motion now before it, the Court finds that the plaintiff's claim comes within the Court's admiralty jurisdiction.

## APPLICATION OF THE *KELLY* FACTORS TO DEFENDANTS' MOTION TO DISMISS

In order to fully explain the Court's decision, it is necessary to discuss each of the *Kelly* factors.

(1) The functions and roles of the parties:

■ The plaintiff is a vessel owner which, traditionally, is a maritime role.[9] The claim asserted is for reimbursement of maintenance and cure payments made to a seaman who was injured while performing his duties as a crewman aboard a vessel in navigable waters. Although not directly a party, Voisin's status as a seaman adds to the salty flavor of plaintiff's claim.[10] It is also clear that the plaintiff is legally subrogated to Voisin's claim because of the payments made to him.

1. The Court will refer to the defendants collectively as Exxon.

2. 409 U.S. 249, 268, 93 S.Ct. 493, 504, 34 L.Ed.2d 454 (1972).

3. 457 U.S. 668, 677, 102 S.Ct. 2654, 2659, 73 L.Ed.2d 300 (1982).

4. *Palmer v. Fayard Moving and Transp. Corp.,* 930 F.2d 437, 439 (5th Cir.1991).

5. 485 F.2d 520 (5th Cir.1973).

6. *Kelly,* 485 F.2d at 525.

7. *Sisson v. Ruby,* 497 U.S. 358, 365 n. 4, 110 S.Ct. 2892, 2897 n. 4, 111 L.Ed.2d 292 (1990).

8. *Broughton Offshore Drilling, Inc. v. South Cent. Mach., Inc.,* 911 F.2d 1050, 1052 n. 1 (5th Cir. 1990).

9. *Palmer v. Fayard Moving and Transp. Corp.,* 930 F.2d 437, 440 (5th Cir.1991).

10. A seaman performing duties as such on a vessel in navigable waters is a distinctly maritime function and role. *Taylor v. Kennedy Engine, Inc.,* 861 F.2d 127, 129 (5th Cir.1988).

The defendants have much less of a maritime connection because they are land based companies. There is nothing maritime in nature about petroleum products being distilled and transported through a pipeline at the refinery. However, the defendants maintain an enormous docking facility for shipping their petroleum products via water. In fact, Voisin's injury occurred while the M/V Bill Gee was docked at the defendants' facility. Thus, it cannot be said that there is no maritime nexus insofar as the defendants' operations are concerned.

Defendants apparently argue that because the M/V Bill Gee was not engaged in navigation nor performing any tasks at the time of the accident, there is no connection between the wrong committed and traditional maritime activity. However, a similar contention was rejected by the Supreme Court in *Sisson v. Ruby*.[11] In that case, the Supreme Court declined to hold that "in the context of non-commercial activity, only navigation can be characterized as substantially related to traditional maritime activity."[12] The Supreme Court further stated,

[c]learly, the storage and maintenance of a vessel at a marina on navigable waters is substantially related to "traditional maritime activity" given the broad perspective demanded by the second aspect of the test. Docking a vessel at a marina on a navigable waterway is a common, if not indispensable, maritime activity.[13]

Thus, the Court finds that the function and roles of the parties are more maritime than otherwise under the facts of this case.

(2) The types of vehicles and instrumentalities involved:

An analysis of the second *Kelly* factor yields a similar result. The "vehicle" involved in this case was the M/V Bill Gee. A vessel floating in navigable waters is sufficiently maritime in nature.

As to "instrumentalities" which may have been involved, defendants' pipeline, although predominantly non-maritime, has some maritime connection. The fact that defendants' refinery is land based and engaged in a non-maritime industry is not conclusive.[14] An explosion of a land based pipeline situated within a refinery located on a navigable body of water is not so wholly indigenous to land—as evidenced by the injuries to Voisin while aboard the moored M/V Bill Gee—so as to preclude at least some maritime connexity.

(3) The causation and the type of injury:

It is clear that the cause of the injury was a land based pipeline explosion which bears no special relationship to maritime activities. However, an injury to a seaman working on a vessel in navigable waters does have maritime flavor.[15]

The fact that the shock waves could have caused Voisin to lose his balance and fall even if he had been standing on land is not dispositive. The Fifth Circuit has noted that "injuries to workers aboard ship fall within the admiralty jurisdiction even though similar injuries to their counterparts on shore do not."[16]

(4) Traditional concepts of the role of admiralty law:

"The admiralty jurisdiction of federal courts stems from the important national interest in uniformity of law and remedies for those facing the hazards of waterborne transportation."[17] Moreover, admiralty law has historically been concerned with the protection of seamen injured in the course of service to their vessel.[18] Thus, upholding

---

11. 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990).

12. *Sisson*, 497 U.S. at 366, 110 S.Ct. at 2898.

13. 497 U.S. at 367, 110 S.Ct. at 2898.

14. *In re Motor Ship Pac. Carrier*, 489 F.2d 152, 156 (5th Cir.1974).

15. *Palmer v. Fayard Moving and Transp. Corp.*, 930 F.2d 437, 441 (5th Cir.1991).

16. *Taylor v. Kennedy Engine, Inc.*, 861 F.2d 127, 130 (5th Cir.1988); *Parker v. Gulf City Fisheries, Inc.*, 803 F.2d 828, 830 (5th Cir.1986).

17. *Kelly*, 485 F.2d at 526.

18. *Taylor*, 861 F.2d at 130. The Court stated, "[w]e are aware of no case in which we have held admiralty jurisdiction lacking with respect to a seaman's claim for injuries sustained in the course of his service to a vessel in navigable waters." *Taylor*, 861 F.2d at 130.

**48**

admiralty jurisdiction in a maintenance and cure reimbursement claim when a land based pipeline explodes causing injury to a seaman aboard a vessel in navigable waters does not stretch or distort the principles of admiralty law.

Defendants rely on *Herb's Welding, Inc. v. Gray,*[19] *Woessner v. Johns–Manville Sales Corp.,*[20] and *Sohyde Drilling and Marine Co. v. Coastal States Gas Producing Co.*[21] to support their argument that the Court lacks subject matter jurisdiction in admiralty. However, these cases are not controlling. Unlike the case at hand, the injured parties in *Herb's Welding* and *Woessner* were land based workers rather than seamen, while in *Sohyde,* the claim was one for property damage rather than personal injury. The Fifth Circuit has found these differences to be significant.[22]

## CONCLUSION

In summary, an analysis of the *Kelly* factors indicates that the claimed wrong bears a sufficiently significant relationship to traditional maritime activity to satisfy that prong of the *Executive Jet/Foremost* test. Thus, the Court has admiralty jurisdiction over plaintiff's claim for reimbursement of the maintenance and cure payments it made to Voisin.

Therefore:

**IT IS ORDERED** that defendants' motion to dismiss for lack of subject matter jurisdiction be and it is hereby **DENIED.**

---

19.  470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985).

20.  757 F.2d 634 (5th Cir.1985).

21.  644 F.2d 1132 (5th Cir.1981).

22.  *Broughton Offshore Drilling, Inc. v. South Cent. Mach., Inc.,* 911 F.2d 1050, 1052 (5th Cir. 1990) (the Court, referring to the Court in *Sohyde,* stated that the "[C]ourt distinguished between claims for personal injury suffered on nav-

igable waters, which it remarked would surely lie within admiralty jurisdiction, and the property claims before it, which the court concluded were outside admiralty jurisdiction."); *Taylor v. Kennedy Engine, Inc.,* 861 F.2d 127, 130 (5th Cir. 1988) (referring to *Woessner,* the Court stated that "the plaintiffs, who claimed to have incurred asbestosis, were independently employed land-based insulators … and were not engaged in work traditionally done by a vessel crew.").