19-1143-cv
*Bouchard Transp. Co., et al. v. Long Island Lighting Co., et al.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of March, two thousand twenty.

Present:
> DEBRA ANN LIVINGSTON,
> MICHAEL H. PARK,
> > *Circuit Judges*,
> STEFAN R. UNDERHILL,
> > *Chief District Judge*.*

_____

BOUCHARD TRANSPORTATION CO., INC., MOTOR TUG ELLEN S. BOUCHARD INC., as owner of the TUG ELLEN S. BOUCHARD, B. NO. 280 CORPORATION, as owners of the BARGE B. NO. 280,

> *Plaintiffs-Appellees*,

> v.                                                          19-1143-cv

THE LONG ISLAND LIGHTING COMPANY, DBA LIPA,

> *Limitation Defendant-Claimant-Appellant*.†

_____

_____

* Chief Judge Stefan R. Underhill, of the United States District Court for the District of Connecticut, sitting by designation.

† The Clerk is respectfully requested to amend the caption accordingly.

#

For Plaintiff-Appellee: GINA M. VENEZIA, Freehill Hogan & Maher, New York, NY

For Limitation Defendant-
Claimant-Appellant: JAMES H. HOHENSTEIN, Holland & Knight LLP, New York, NY

Appeal from a judgment of the United States District Court for the Southern District of New York (Crotty, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Limitation Defendant-Claimant-Appellant the Long Island Lighting Company, DBA LIPA ("LIPA") appeals from a March 27, 2019 judgment of the United States District Court for the Southern District of New York (Crotty, *J.*), granting a motion for summary judgment filed by Plaintiffs-Appellees Bouchard Transportation Co., Inc.; Motor Tug Ellen S. Bouchard Inc., as owner of the Tug Ellen S. Bouchard; and B. No. 280 Corporation, as owners of the Barge B. No. 280 (collectively, "Bouchard"), in an action to limit Bouchard's liability in connection with a maritime incident that resulted in damage to an underwater electrical transmission cable system. LIPA, a publicly created entity responsible for supplying electrical power to customers in Long Island and parts of New York City, alleged economic damages resulting from the increased cost of supplying power to its customers while the damaged cable was taken offline for repairs. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\*       \*       \*

This appeal concerns the application of a doctrine that originated in *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927). That case and its progeny have come to stand for a "broad rule barring [recovery of] economic losses for unintentional maritime torts in the absence of

physical injury." *Am. Petroleum & Transp., Inc. v. City of New York*, 737 F.3d 185, 192 (2d Cir. 2013). As we have explained, a claimant must have a "proprietary interest" in the damaged property to recover. *See G & G Steel, Inc. v. Sea Wolf Marine Transp., LLC*, 380 F. App'x 103, 104 (2d Cir. 2010); *Gas Natural SDG S.A. v. United States*, No. 07-2129-cv, 2008 WL 4643944, at *1 (2d Cir. Oct. 21, 2008) (summary order). Bouchard argued before the district court that LIPA, which neither owned the damaged transmission infrastructure nor bore responsibility for its maintenance and repair, lacked the proprietary interest in the underwater cable system necessary to recover its purely economic losses from Bouchard.

Rather than conducting its own analysis of whether LIPA had a proprietary interest in the underwater cable system, the district court determined that LIPA had already fully litigated and lost on the same issue in a prior action before the United States District Court for the Southern District of Texas (Lake, *J.*), and was therefore collaterally estopped from arguing that it had a proprietary interest in the damaged infrastructure. *See In re Horizon Vessels, Inc.*, No. 03-cv-3280 (S.D. Tex. Dec. 7, 2006) (the "Texas Decision"). On appeal, LIPA contends that the district court erred in giving the Texas Decision preclusive effect because (1) the legal standards for applying the *Robins Dry Dock* rule in the Fifth Circuit differ materially from those in this Circuit, (2) the Texas Decision was based on mistaken findings of fact, and (3) important public policy issues counsel against the application of collateral estoppel here. Each of these arguments is without merit.

Collateral estoppel prevents a party "from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002). We have consistently held that issue preclusion applies only in the presence of the following four elements: "'(1) the identical issue was raised in a

\#

previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012) (quoting *Marvel Characters, Inc.*, 310 F.3d at 288–89). But "even where the specified elements of collateral estoppel are present, reexamination of a legal issue is appropriate where there has been a change in the legal landscape after the decision claimed to have preclusive effect." *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005). Likewise, issues are "not identical if the second action involves application of a different legal standard." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1306 (2015) (internal quotation marks omitted). "We review a district court's grant of summary judgment based on the doctrine of collateral estoppel *de novo*, construing the record in the light most favorable to the non-moving party and drawing all inferences in that party's favor." *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 303 (2d Cir. 1999).

LIPA does not dispute that the Texas Decision satisfies three of the four factors necessary to apply issue preclusion; it contests only the district court's conclusion that the prior action raised an identical issue of law. In LIPA's telling, the Fifth Circuit applies a more stringent version of *Robins Dry Dock* rule than the Second Circuit, requiring that a plaintiff asserting a proprietary interest establish "actual possession or control, responsibility for repair and responsibility for maintenance" of the relevant property. *IMTT-Gretna v. Robert E. Lee SS*, 993 F.2d 1193, 1194 (5th Cir. 1993). LIPA argues that the Second Circuit disfavors the Fifth Circuit's broad application of *Robins Dry Dock* to limit recovery, relying heavily on our opinion in *In re Kinsman Transit Co.* ("*Kinsman II*"), 388 F.2d 821 (2d Cir. 1968). *Kinsman II* affirmed a district court's finding of no

4

#

liability under *Robins Dry Dock*, but only on an alternative ground that the alleged losses were too remote to recover under traditional tort principles of foreseeability and probable cause.

A review of our precedent, however, reveals that LIPA's putative circuit split is illusory. *Kinsman II* does not stand for the proposition that *Robins Dry Dock* must be applied narrowly, and we have since "explicitly accept[ed] the broad rule . . . that economic losses are not recoverable for an unintentional maritime tort in the absence of physical injury." *Am. Petroleum*, 737 F.3d at 195–96. We have also applied, albeit in a nonprecedential summary order, the Fifth Circuit's test for evaluating a claimant's proprietary interest in damaged property. *See G & G Steel*, 380 F. App'x at 104 (citing *IMTT-Gretna*, 993 F.2d at 1194). LIPA can point to no Second Circuit precedent to suggest that we construe *Robins Dry Dock* differently than the Fifth Circuit does. Rather, we have expressed an intention to join "a clear consensus of courts throughout the country."[1] *Am. Petroleum*, 737 F.3d at 196; *see also id.* at 190 (relying on *State of Louisiana ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1022 (5th Cir. 1985) (en banc), to articulate the basis for "the broad rule attributed to *Robins Dry Dock*").

Next, LIPA may not evade preclusion by asserting that the Texas Decision was erroneously decided. We have consistently observed that collateral estoppel "represents an informed choice that the occasional permanent encapsulation of a wrong result is a price worth paying to promote the worthy goals of ending disputes and avoiding repetitive litigation." *Johnson v. Watkins*, 101 F.3d 792, 795 (2d Cir. 1996); *see also Monarch Funding Corp.*, 192 F.3d at 304

---

[1] Although we perceive no distinction between the Fifth Circuit's application of *Robins Dry Dock* and ours, it bears noting that "if federal law provides a single standard, parties cannot escape preclusion simply by litigating anew in tribunals that apply that one standard differently." *B & B Hardware,* 575 U.S. at 154; *see also Smith v. Bayer Corp.*, 564 U.S. 299, 312 n.9 (2011) ("Minor variations in the application of what is in essence the same legal standard do not defeat preclusion."). *American Petroleum*—as well as our summary orders in *Gas Natural* and *G & G Steel*—make clear that the Second and Fifth Circuits employ the same legal standard.

#

("[C]ollateral estoppel jurisprudence generally places termination of litigation ahead of a correct result."). Although courts will examine the merits of a decision that might otherwise be a basis for collateral estoppel when "circumstances . . . so undermine confidence in the validity of [the] original determination as to render application of the doctrine impermissibly unfair," no such circumstances present themselves here. *Monarch Funding Corp.*, 192 F.3d at 304 (internal quotation marks omitted). The district court's decision did not, for example, deny LIPA "procedural opportunities unavailable in the first action that could readily cause a different result" or deprive it of a "constitutional right to a jury trial." *Id.* (internal quotation marks omitted). And neither party disputes that LIPA had the opportunity to "litigate the relevant issue vigorously in the original action." *Id.*

Finally, LIPA's status as a not-for-profit public utility did not require the district court to refrain from giving the Texas Decision preclusive effect. LIPA provides no authority or clear rationale to except it from the ordinary operation of either collateral estoppel doctrine or the *Robins Dry Dock* rule. Moreover, we have previously affirmed a district court's application of collateral estoppel against the Long Island Lighting Company ("LILCO"), LIPA's predecessor in interest.[2] *Cf. Long Island Lighting Co. v. Imo Indus. Inc.*, 6 F.3d 876, 885–86 (2d Cir. 1993) (affirming that a prior decision of the New York Public Service Commission precluded LILCO from relitigating the expiration of a statute of limitations in an action against a manufacturer of faulty generators).

We have considered LIPA's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

---

[2] *Long Island Lighting Co.* applied New York's doctrine of collateral estoppel, which is nearly identical to the federal standard. *See* 6 F.3d at 885 ("The requirements for collateral estoppel under New York law are that the issue be identical and necessarily decided in the prior proceeding, and that the party against whom preclusion is sought was accorded a full and fair opportunity to contest the issue in the prior proceeding.").

6

\#

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk