**BLUE GULF SEAFOOD, INC., Dolphin J., Inc., T & J Oysters, Inc., and Mermaid Seafood, Inc.**

v.

**TRANSTEXAS GAS CORPORATION and Falcon Drilling Company, Inc.**

No. CIV. A. G–98–349.

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 27, 1998.

Kenneth Ross Citti, Citti & Crinion, Houston, TX, for Blue Gulf Seafood Inc., Dolphin J., Inc., Mermaid Seafood, Inc., T & J Oysters Inc.

Graham Kerin Blair, Verner Liipfert Bernhard, McPherson and Hand, Houston, TX, for TransTexas Gas Corp.

Giorgio (George) Caflisch, Preis Kraft & Roy, Houston, TX, for Falcon Drilling Co. Inc.

### ORDER GRANTING DEFENDANT'S MOTION FOR DISMISSAL FOR FAILURE TO STATE A CLAIM FOR WHICH RELIEF MAY BE GRANTED

KENT, District Judge.

Plaintiffs filed suit alleging that their oyster leases suffered extensive damage as a consequence of Defendants' oil exploration and production operations in neighboring waters. Now before the Court is Defendants' Motion to Dismiss of September 9, 1998. For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED.** Consequently, all of Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE.**

## I. FACTUAL SUMMARY

Plaintiff Blue Gulf Seafood, Inc. ("Blue Gulf") is a Louisiana corporation with its principal place of business in Texas. Plaintiffs Dolphin J., Inc. ("Dolphin J.") and T & J Oysters, Inc. ("T & J") are both Louisiana corporations. Plaintiffs are all in the business of oyster farming, wholesaling, and retailing. In 1994, Dolphin J. and T & J separately purchased two adjacent oyster leases in Galveston Bay from Hillman & Shandley Boat Mfg., Inc., a Texas corporation that had owned the two oyster leases under a certificate of location issued by the Texas Parks and Wildlife Department. Together, the adjacent oyster leases totaled 98.43 acres. In early 1997, Dolphin J. and T & J conveyed the two oyster beds to Blue Gulf by sublease. In the two identical sublease agreements, Dolphin J. and T & J each included a clause reserving to them "all the compensation for damages to the water bottoms and oysters actually lost" in the event of "the passing of a pipeline, oil exploration seismic crossing" or other seaborne harms.

In mid– to late–1996, Defendants TransTexas Gas Corporation ("TransTexas") and Falcon Drilling Company ("Falcon") began exploring for and producing oil and gas in an area adjacent to Plaintiffs' oyster beds. Specifically, Defendants moved drilling rigs, supply boats, crew boats and other service vessels in and out of the area. In addition, Defendants conducted dredging operations, constructed underwater pipelines, and buried those pipelines perilously close to Plaintiffs' oyster beds. Despite overtures from Plaintiff Blue Gulf asking Defendants to employ greater caution, Defendants continued their operations unabated, allegedly damaging Plaintiffs' oyster beds, killing the oysters, and ruining at least two years of potential harvests.

In late 1998, Plaintiff Blue Gulf filed suit against Defendants, alleging among other claims negligence, trespass, and nuisance. Plaintiffs Dolphin J., T & J, and Mermaid Seafood, Inc. ("Mermaid") subsequently intervened as interested parties. Now before this Court is Defendants' motion to dismiss for failure to state a claim for which relief

may be granted or, in the alternative, summary judgment.

## II. ANALYSIS

When considering a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint, and views them in a light most favorable to the plaintiff. *See Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir.1993). Unlike a motion for summary judgment, a motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir.1994). The United States Court of Appeals for the Fifth Circuit has noted that dismissal for failure to state a claim is disfavored and will be appropriate only in rare circumstances. *Mahone v. Addicks Util. Dist. Of Harris County*, 836 F.2d 921, 926 (5th Cir.1988).

Plaintiffs' claim can be characterized as one for economic loss. Defendants' activities allegedly damaged Plaintiffs' oyster beds, killed their oysters, and ruined their oyster harvests for years to come. To prevail on such a claim, a plaintiff must generally show that it sustained physical injury to a proprietary interest. *See Robins Dry Dock & Repair v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927). However, the courts of this Circuit recognize an exception to this general rule for commercial fishermen. *See State of Louisiana ex rel. Guste v. M/V Testbank*, 524 F.Supp. 1170, 1173 (E.D.La. 1981); *see also State of Louisiana ex rel. Guste v. M/V Testbank*, 752 F.2d 1019, 1020 (5th Cir.1985). Commercial fishermen, a group that presumably includes oystermen such as Plaintiffs, may still recover for pure economic harm resulting from negligent acts. *See Golnoy Barge Co. v. M/T Shinoussa*, 841 F.Supp. 783, 785 (S.D.Tex.1993).

However, the exception to the *Robins* rule for commercial fishermen is a narrow one. *See id.* The exception rests on the "public right" of commercial fishermen to make their living on and from the sea. *See id.* The contours of this public right are shaped by state law to the extent that a state may restrict the right to those licensed to fish its waters on a commercial basis. *See id.* In *Golnoy Barge Co.*, the district court held that non-licensed commercial fishermen, shrimpers, crabbers, and oystermen could not recover damages for lost economic benefits they had no legal right to in the first place. *Id.* 841 F.Supp. at 785–86. In other words, fishermen not licensed to ply their trade in Texas waters do not enjoy the "public right" to fish without interference. *See id.* 841 F.Supp. at 785 (citing *Testbank*, 524 F.Supp. at 1174).

In the case before this Court, Plaintiffs' situation is analogous to that of the unlicensed commercial fishermen in *Golnoy Barge Co.* Plaintiffs are all Louisiana corporations. In Texas, only corporations incorporated under the laws of Texas may lease or control private oyster beds under a certificate of location. *See* Tex. Parks & Wild. Code Ann. § 76.008 (Vernon 1991) ("No corporation other than those incorporated under the laws of this state may lease or control land under a certificate of location.").[1] The previous owner of the oyster beds, Hillman & Shandley, held the beds under a valid certificate of location. However, Hillman & Shandley is a Texas corporation. As Plaintiffs are all Louisiana corporations, their physical possession of title to these oyster beds avails them nought, as they cannot legally control the oyster beds under Texas law. Consequently, Plaintiffs do not enjoy a public right to exploit the land beneath Galveston Bay that they purport to own.

Plaintiffs contend that even if they do not legally own title to the oyster lease and water bottoms themselves, their interest in

---

1. Public oyster beds, which are defined as "all natural oyster beds" and "all [other] oyster beds not designated as private," *see* Tex. Parks & Wild.Code Ann. § 76.002(a) and (b), are not subject to location. *See* Tex. Parks & Wild.Code Ann. § 76.003. Private oyster beds, with a few exceptions not relevant here, are subject to location. *See* Tex. Parks & Wild.Code Ann. § 76.010. Neither side contends that the oyster beds at issue are not private; consequently, they are subject to location.

the oysters and the material composing the oyster beds is a form of personal property and thus gives them standing to make a claim for economic damages. Under this argument they fare little better. The oyster beds at issue are undisputedly private beds, as they were conveyed to Plaintiffs Dolphin J. and T & J under a certificate of location. In order to plant oysters on a private location, a person or corporation must apply to the Texas Department of Fish and Wildlife for an oyster permit. *See* Tex. Parks & Wild.Code Ann. § 76.301(a). To qualify for a permit, a corporation must be incorporated under Texas law. *See* Tex. Parks & Wild. Code Ann. § 76.301(b). Because Plaintiffs are not Texas corporations, they cannot qualify for a permit. Lacking a permit to plant oysters in this location, Plaintiffs consequently cannot assert an interest in the damaged oysters and oyster shell as personal property. *Cf. Golnoy Barge Co.,* 841 F.Supp. at 785.

■ Plaintiffs have suffered economic harm as a result of Defendant's allegedly negligent conduct. As producers and marketers of oysters who are apparently licensed in Texas as seafood wholesalers, their livelihood has been damaged by the loss of oysters which they were counting on being able to sell. The Court rejects Defendants' attempted characterization of Plaintiffs as something short of commercial fishermen, but it also recognizes that the *Testbank* exception for commercial fishermen is a narrow one. Only commercial fishermen who enjoy a public right under the laws of Texas may recover for pure economic harm resulting from negligent acts. *See Golnoy Barge Co.,* 841 F.Supp. at 785. Assuming that Plaintiffs can prove all the facts they have alleged respecting Defendant's liability on their claims of negligence, trespass, and nuisance, as the Court must for purposes of a motion to dismiss, *see Malina v. Gonzales,* 994 F.2d at 1125, the Court nonetheless notes that Plaintiffs may not recover damages based on the simple fact that they are all incorporated under the laws of Louisiana. Accordingly, the Court must **GRANT** Defendants' motion to dismiss for failure to state a claim for which relief may be granted.

## III. CONCLUSION

For the above reasons, Defendants' Motion to Dismiss is **GRANTED**. Consequently, all of Plaintiffs' claims are hereby **DISMISSED WITH PREJUDICE**. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a compelling showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**